IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

U.S. DISTRICT COURT
FILED AT WHEELING, WV
APR 1 4 2009
NORTHERN DISTRICT OF WV
OFFICE OF THE CLERK

| | |
|---|---|
| WEIRTON HEALTH PARTNERS, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 5:09-CV-40 |
| GABRIELLE YATES, | ) |
| Defendant. | ) |

## COMPLAINT

AND NOW, this 14th day of April 2009, Plaintiff, Weirton Health Partners, LLC, by and through counsel file the following complaint and support and aver the following:

### THE PARTIES

1. Plaintiff, Weirton Health Partners, LLC ("Weirton Health Partners") is an Ohio corporation and is a wholly owned subsidiary of Chancellor Health Partners, Inc., whose headquarters and principal place of business is located in the State of Ohio.

2. Weirton Health Partners operates the Wyngate Senior Living Community, located at 100 Wyngate Drive, Weirton, West Virginia.

3. Defendant Gabrielle Yates ("Yates") is adult individual currently residing at 3536 Orchard Street, Weirton, West Virginia.

### JURISDICTION AND VENUE

4. The Court has diversity jurisdiction over the claims asserted in this action under 28 U.S.C. § 1332.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b), in that the events giving rise to Plaintiff's claims arose in the Northern District of West Virginia.

### FACTS

6. Yates was hired as a resident assistant at the Wyngate Senior Living Community on July 20, 2005.

7. On July 20, 2005, Plaintiff executed a confidentiality agreement.

8. In or around June 2008, members of the staff of the Wyngate Senior Living Community discovered the existence of a romantic relationship between two elderly residents.

9. Shortly thereafter, Tammy Provenzano, the Wellness Manager of the Wyngate Senior Living Community at that time, contacted the daughter of the elderly female resident to inform her of this relationship.

10. The elderly female resident's daughter indicated that she was happy that her mother had found someone whom she liked and gave her consent to permit the relationship to continue.

11. On or about October 29, 2008, Michelle Shonkweiler ("Shonkweiler"), a resident assistant, discovered the two elderly residents together again.

12. Shonkweiler reported the conduct to Cecelia McClory ("McClory"), the nurse on duty at the time.

13. McClory separated the two elderly residents and returned the elderly female resident to her room.

14. When asked whether she was forced to engage in any inappropriate conduct with the elderly male resident, the elderly female resident responded "no."

15. Neither McClory nor Shonkweiler observed the elderly residents engaging in any inappropriate conduct.

16. Shonkweiler did not report the conduct to any other employee other than McClory.

17. Subsequently, McClory contacted Debra Petras ("Petras"), Administrator of the Wyngate Senior Living Community, and informed her of the conduct.

18. McClory subsequently reported the conduct to Jody Bowden ("Bowden"), the Wellness Manager of the Wyngate Senior Living Community at that time.

19. On or about October 29, 2008, Petras contacted the area ombudsman and informed him of the situation.

20. On or about October 29, 2008, Petras contacted the West Virginia Office of Health Facility Licensure & Certification ("OHFLAC") to report the conduct between the two elderly residents.

21. It is believed, and therefore averred, that on or about October 29, 2008 Yates also contacted the daughter of the elderly female resident and reported that her mother was being raped repeatedly by the elderly male resident.

22. It is believed, and therefore averred, that Yates informed other employees that the elderly female resident was being raped repeatedly by the elderly male resident and that Plaintiff's administration was aware of the conduct and was doing nothing about it.

23. It is believed, and therefore averred, that Yates further reported to the daughter of the elderly female resident that Plaintiff's administration was aware of the conduct and were doing nothing about it.

24. It is believed, and therefore averred, that Yates further reported to families of other residents of the Wyngate Senior Living Community that an elderly female resident was being raped repeatedly by the elderly male resident and that Plaintiff's administration was aware of the conduct and was doing nothing about it.

25. It is believed, and therefore averred, that Yates further reported to members of the community at large that an elderly female resident was being raped repeatedly by the elderly male resident and that Plaintiff's administration was aware of the conduct and was doing nothing about it.

26. On November 1, 2008, officers from the local police department arrived at the Wyngate Senior Living Community with allegations that a female resident was being raped repeatedly and the administrator of the home was doing nothing about it.

27. Bowden was unaware of any allegations of rape until the police arrived at the Wyngate Senior Living Community.

28. Following an investigation, the police did not file charges against the elderly male resident.

29. It is believed, and therefore averred, that based on Yates' reports, the daughter of the elderly female resident removed her mother from the Wyngate Senior Living Community on November 2, 2008.

30. On November 1, 2008, Plaintiff terminated Yates' employment for, *inter alia*, failure to follow the chain of command.

31. In November 2008, the OHFLAC conducted a thorough investigation of the conduct between the elderly residents.

32. Following its investigation, the OHFLAC found insufficient evidence to identify sexual abuse.

33. The OHFLAC found insufficient evidence to confirm that Bowden instructed the staff to "act as if nothing had happened."

34. The OHFLAC found insufficient evidence to confirm that the elderly female resident's family was not notified of sexual abuse until the end of October 2008. To the contrary, the OHFLAC confirmed that the elderly female resident's family was notified of the existence of the relationship in July 2008.

35. Yates' reports that Plaintiff was aware of the alleged sexual assaults and was doing nothing about it was false and defamatory.

36. Yates maliciously published these false and defamatory statements to the daughter of the elderly female resident, fellow employees, families of other residents and members of the community at large on or about and subsequent to October 29, 2008.

37. Yates maliciously published these false and defamatory statements and the recipient(s) of these statements understood the intended defamatory meaning of these statements.

38. Yates made the defamatory statements at least negligently without regard to the truth or falsity of the statements.

39. The aforementioned defamatory statements were not privileged.

40. The aforementioned defamatory caused injury to the Plaintiff.

41. It is Plaintiffs information and belief that Yates has contacted the families of current residents and prospective residents, employees, and members of the community at large, and informed them a female resident at the Wyngate Senior Living Community had been raped repeatedly and the administrator of the home was doing nothing about it with the specific intent of injuring Plaintiffs' pursuit of their lawful business and to injure these ongoing professional relationships.

42. By reason of the publication and utterance of the aforementioned defamatory statements, Plaintiff has been injured in its good name and reputation, and has been brought into disgrace and disrepute among members of the public.

43. Plaintiff, as an assisted living facility, relies on his reputation and good standing in the community in order to successfully pursue its business and to secure residents.

## COUNT I

### DEFAMATION

44. Plaintiff incorporates by reference hereto the allegations contained in paragraphs 1 through 43 as if fully set forth herein.

45. The statements made by Yates, as discussed above, are defamatory in nature.

46. The statements made by Yates, as discussed above, were intended to harass and injure the reputation of Plaintiff so as to lower it in the estimation of the community and to deter third persons from associating or dealing with it.

47. The defamatory statements ascribed to Plaintiff certain conduct, character and action which adversely affect its fitness for the proper conduct of its business, trade and profession.

48. Yates intentionally published the above defamatory statements with the intent to injure Plaintiff and the recipients of the allegations understood their defamatory nature.

4

49. Plaintiff was thereby injured by acts of Yates.

50. Yates was not privileged, either absolutely or conditionally, to make or publish the above defamatory statements.

WHEREFORE, Plaintiff respectfully requests this honorable court to enter judgment in its favor and against Yates in an amount in excess of $75,000.00 together with punitive damages and costs and interest.

## COUNT II

### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

51. Plaintiff incorporates by reference hereto the allegations contained in paragraphs 1 through 50 as if fully set forth herein.

52. Plaintiff had existing contractual relationships with its residents and, in particular, with the elderly female resident at issue in this case.

53. Upon information and belief, Yates intentionally, improperly and maliciously interfered with those contractual relationships, without any need to do so, by publishing the defamatory comments to the existing residents of Plaintiff's and/or such residents' families with the specific intent of causing those residents to end their contractual relationships with Plaintiff.

54. Plaintiff has been harmed as a result of the action of Yates including, but not limited to, the loss of the contractual relationship with the elderly female resident at issue in this case.

WHEREFORE, Plaintiff respectfully requests this honorable court to enter judgment in its favor and against Yates in an amount in excess of $75,000.00 together with punitive damages and costs and interest.

## COUNT III

### FALSE LIGHT

55. Plaintiff incorporates by reference hereto the allegations contained in paragraphs 1 through 54 as if fully set forth herein.

56. Yates intentionally, maliciously and wrongfully made public misrepresentations on a widespread basis regarding private facts relative to Plaintiff's activities, management, compliance with applicable state law and the well-being of its residents, including, but not limited to, the false and malicious statements that the elderly female resident at issue was being raped repeatedly and the administrator of the home was doing nothing about it.

57. These statements were made with the specific intent of injuring the Plaintiff.

58. The allegations regarding Plaintiff are highly offensive to the reasonable person and do not regard areas of legitimate concern to the public.

59. Yates intentionally, maliciously and wrongfully published these statements and Plaintiff was thereby injured by the publishing of these false and offensive statements.

WHEREFORE, Plaintiff respectfully requests this honorable court to enter judgment in its favor and against Yates in an amount in excess of $75,000.00 together with punitive damages and costs and interests.

## COUNT IV

### INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS

60. Plaintiff incorporates by reference hereto the allegations contained in paragraphs 1 through 59 as if fully set forth herein.

61. Plaintiff had prospective contractual relationships with both existing and prospective residents.

62. With the purpose and intent to harm Plaintiff, upon information and belief, Yates, prevented these relationships from occurring and maturing by publishing false, defamatory and malicious statements regarding Plaintiff's alleged inappropriate handling of the alleged sexual assault of the elderly female resident at issue in this case.

63. Yates was not privileged or justified in making the false and defamatory statements.

64. Plaintiff was damaged as a result of Yates' conduct in that it lost prospective residents.

WHEREFORE, Plaintiff respectfully requests this honorable court to enter judgment in their favor and against Yates in an amount in excess of $75,000.00 together with punitive damages and costs and interest.

## COUNT V

### BREACH OF CONTRACT

65. Plaintiff incorporates by reference hereto the allegations contained in paragraphs 1 through 64 as if fully set forth herein.

66. On July 20, 2005, Plaintiff executed a confidentiality agreement that stated, inter alia, that Plaintiff would "not disclose or divulge either directly or indirectly Confidential Information … ."

67.     The term "Confidential Information" is defined in the agreement as "any information of any kind, nature, or description concerning any matters affecting or relating to Community services, the business or operations of the Community, and/or the products, plans processes, or other data of the Community."

68.     By disclosing or divulging confidential information related to the conduct of the two elderly residents, Yates violated material provisions of the confidentiality agreement.

WHEREFORE, Plaintiff respectfully requests this honorable court to enter judgment in their favor and against Yates in an amount in excess of $75,000.00 together with punitive damages and costs and interest.

Dated: April 14, 2009

Respectfully submitted,

JACKSON LEWIS LLP

Martin J. Saunders
W.Va. I.D. No. 9236
saunderm@jacksonlewis.com
Craig W. Snethen
W.Va. I.D. No. 10429
snethenc@jacksonlewis.com
One PPG Place, 28th Floor
Pittsburgh, PA 15222
(412) 232-0404
(412) 232-3441 *facsimile*

Counsel for Plaintiff
Weirton Health Partners, LLC

7