**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| WEIRTON HEALTH PARTNERS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 09-cv-00040-FPS |
| | ) |
| GABRIELLE YATES, | ) |
| | ) |
| Defendant. | ) |

**BRIEF IN SUPPORT OF WEIRTON HEALTH PARTNERS' MOTION TO DISMISS COUNTERCLAIM AND MOTION TO STRIKE**

Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f), Weirton Health Partners, LLC ("Weirton Health Partners"), by and through its undersigned counsel, files the following brief in support of its motion to dismiss and asks this Honorable Court to dismiss with prejudice:

1. Yates' common law counterclaim for wrongful discharge in violation of an alleged public policy;

2. Yates' common law counterclaim for outrage/intentional infliction of emotional distress;

Weirton Health Partners further requests that Yates' request for attorney's fees, insofar as it relates to her common law counterclaim for wrongful discharge, be stricken.

**I.   STATEMENT OF THE CASE**

On April 14, 2009, Weirton Health Partners filed a five-count complaint against Yates alleging, *inter alia*, that Yates made defamatory statements regarding Weirton Health Partners. On July 10, 2009, Yates filed an answer to Weirton Health Partners' complaint, as well as common law counterclaims for wrongful discharge and outrage.

Specifically, Yates alleges that in or about June 2008, she discovered the existence of a sexual relationship between a male resident and a female resident. (Counterclaim ¶ 5). Upon learning of this relationship, Yates claims she notified her supervisors of the relationship and of her concerns that the female resident was incapable of consenting to a sexual relationship. (Counterclaim ¶ 6). Yates claims she was told to ignore the relationship. (Counterclaim ¶ 7). Yates claims that she subsequently contacted the female resident's family to notify them of the sexual relationship. (Counterclaim ¶ 8). Yates claims that she was terminated on Movember 1, 2008. (Counterclaim ¶ 9).

Yates claims that she was terminated in violation of public policy because she (1) discovered and reported potentially criminal behavior;[1] (2) discovered and reported her employer's alleged failure to properly conduct itself in its fiduciary capacity;[2] and (3) gave testimony in relation to a legal action.[3] (Counterclaim ¶ 10). In addition, Yates claims that Weirton Health Partners' conduct towards her constituted the tort of outrage. (Counterclaim ¶ 13). As part of her counterclaim, Yates sought attorney's fees and costs. Weirton Health Partners has filed a motion to dismiss the counterclaim and a motion to strike Yates' claim for attorney's fees and costs. Weirton Health Partners files the following in support of its motion to dismiss counterclaim and motion to strike.

---

[1] In fact, following an investigation by the local police, no criminal charges were filed against the elderly male resident accused of sexually assaulting the elderly female resident in question.

[2] Weirton Health Partners notes that Yates' counterclaim presupposes the existence of a fiduciary relationship, but has not pleaded any facts that would point to the existence of such a relationship.

[3] At the time of Yates' termination, Weirton Health Partners was unaware of the existence of any legal action involving the elderly female resident at issue. Indeed, to this day, Weirton Health Partners is not aware of any action in which Yates was or had been called to testify. Yates has not, in her counterclaim, alleged any facts to support such a claim.

## II. QUESTIONS PRESENTED

A. Can Yates maintain a common law wrongful discharge counterclaim predicated on vague and non-specific precepts not reflected in the constitution, legislative enactments, legislatively approved regulations, and/or judicial opinions of the State of West Virginia?

**SUGGESTED ANSWER: NO**

B. Does the West Virginia Workers' Compensation Act grant employers immunity from tort claims that do not contain allegations of the specific intent necessary for the "deliberate intention" exception to apply?

**SUGGESTED ANSWER: YES**

C. Has Yates alleged any facts indicating that Weirton Health Partners' actions were atrocious, intolerable and so extreme and outrageous as to exceed the bounds of decency so as to state a claim for outrage/intentional infliction of emotional distress?

**SUGGESTED ANSWER: NO**

D. Has Yates alleged any facts indicating that she sustained the type of injuries required to assert a claim for outrage/intentional infliction of emotional distress?

**SUGGESTED ANSWER: NO**

E. Insofar as they relate to her common law claim for wrongful discharge, has Yates stated a valid claim for attorney's fees?

**SUGGESTED ANSWER: NO**

## III. LEGAL STANDARD

In considering whether to grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), matters appearing in the record of the case and exhibits attached to the complaint may be taken into account.[4] Nevertheless, the court must consider primarily the allegations contained in the complaint. See Bartlett v. Frederick County, 2007 U.S. App. LEXIS 19860, 246 Fed.

---

[4] In deciding a motion to dismiss, courts primarily consider the allegations in the complaint; however, exhibits attached to the complaint and matters of public record may also be considered. 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1357 at 299.

3

Appx. 201 (4th Cir. August 21, 2007). When there exists a conflict between the complaint's bare allegations and an exhibit attached to the complaint, the exhibit prevails. Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). In Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1969 (U.S. 2007), the Supreme Court declared the "retirement" of the long-cited "no set of facts" standard first announced in Conley v. Gibson, 355 U.S. 41 (1957). The Court in Twombly looked instead to whether the plaintiff stated "enough facts to state a claim to relief that is plausible on its face," id. at 1974, observing that "plaintiff's obligation to provide grounds for his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," id. at 1964-65 (internal quotation marks omitted). In sum, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

Regardless of the standard used, for the purpose of Weirton Health Partners' Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, this Court must accept as true all facts alleged in the Complaint and must draw all reasonable inferences in the light most favorable to the non-moving party. Bominflot, Inc. v. M/V Henrich S, 465 F.3d 144, 145-46 (4th Cir. 2006). Even in light of this standard, however, the Court need not credit "unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000); see also Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Moreover, this Court is not required to accept as true "a legal conclusion couched as a factual allegation," conclusory allegations devoid of any reference to actual events, or "allegations that are merely conclusory,

4

unwarranted deductions of fact or unreasonable inferences." See Papasan v. Allain, 478 U.S. 265, 286 (1986); United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979); Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002).

Thus, although non-moving party's version of the facts must be accepted as true, this does not mean that the Court must accept that party's characterization of those facts. Eastern Shore, 213 F.3d at 180. Moreover, a court cannot assume that the non-moving party can prove facts that he or she has not alleged. Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 526 (1983). Accordingly, this Court need not strain to find inferences favorable to Yates, nor should it accept legal conclusions or opinions, even if they are couched as factual allegations.

## IV. DISCUSSION

### A. YATES' COUNTERCLAIM FOR WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY IS WITHOUT FOUNDATION IN ANY SUBSTANTIAL PUBLIC POLICY OF THE STATE OF WEST VIRGINIA.

The general rule in West Virginia is that the law presumes that employment is terminable at will, permitting an employer to discharge the employee for cause, for no cause, or even for wrong cause. Mace v. Charleston Area Med. Ctr. Found., Inc., 422 S.E.2d 624, 630 (W. Va. 1992). In this action, Yates has not alleged that she operated under any type of employment contract which abrogated this general at-will employment doctrine.

The legislature and the state courts have carved out a narrow exception to the at-will employment rule for situations in which the employer's motivation for discharging an employee "contravenes some substantial public policy principle." Harless v. First Nat'l Bank in Fairmont, 162 W. Va. 116, 246 S.E.2d 270, 275 (1978).[5] The existence of a substantial public policy is a question of law to be determined by the court, not a question of fact for the jury.

---

[5] In Harless, the Supreme Court of Appeals of West Virginia created a limited exception to the employment at-will doctrine to allow a common law action for damages when an employer discharges an at-will employee in violation of a substantial public policy of West Virginia.

5

Cordle v. Gen. Hugh Mercer Corp., 325 S.E.2d 111, 114 (W. Va. 1984).

In Washington v. Union Carbide Corp., 870 F.2d 957, 962 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit expounded on the scope of this limited exception:

> … West Virginia courts have proceeded with "great caution" in applying public policy to wrongful discharge actions. The power to declare an employer's conduct as contrary to public policy is to be exercised with restraint, and with due deference to the West Virginia legislature as the primary organ of public policy in the state. Prior cases in this area underscore the need for retaliatory discharge actions to rest upon a statutory articulation of public policy by the West Virginia legislature . . . . There is no instance in which the West Virginia Supreme Court of Appeals has recognized a retaliatory discharge action of any sort in the absence of legislative recognition that such discharge contravenes the public policy of the state.

Union Carbide Corp., 870 F.2d at 962-63 (citations omitted).

Thus, in order to sustain a cause of action for retaliatory discharge, the public policy relied upon must not just exist; it must be *substantial*. Feliciano v. 7-Eleven, Inc., 559 S.E.2d 713, 718 (W. Va. 2001). "Inherent in the term 'substantial public policy' is the concept that the policy will provide specific guidance to a reasonable person." Birthisel v. Tri-Cities Health Servs. Corp., 424 S.E.2d 606, 611 (1992). Moreover, the term "substantial public policy" implies that the policy principle will be clearly recognized simply because it is substantial. "An employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations." Id., 424 S.E.2d at 612. Accordingly, to be substantial, a public policy must not just be recognizable as such but must be so widely regarded as to be evident to employers and employees alike. Feliciano, 559 S.E.2d at 718. Further, the Supreme Court of Appeals clearly has enunciated the sources from which a substantial public policy is to be derived. In Birthisel, supra, the court stated that "[t]o identify the sources of public policy for purposes of determining

whether a retaliatory discharge has occurred, we look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." Birthisel, 188 W. Va. at 377. See also Wounaris v. W. Va. State College, 214 W. Va. 241, 588 S.E.2d 406 (2003).

In this case, Yates claims that her termination contravened public policy principles "including policies prohibiting the termination of at-will employees because such employee discovers and reports potentially criminal behavior occurring on the employer's premises with the employer's knowledge, policies prohibiting the termination of at-will employees because the employee discovers and reports the employer's failure to properly conduct itself in its fiduciary capacity, and policies prohibiting the termination of at-will employees because such employee may give testimony in relation to a legal action." (Counterclaim ¶ 10). Yates, however, has been unable to uncover any statute, regulation or judicial decision embodying any of the alleged "policies" that she alleges constitute the basis of her claim. Indeed, the alleged "public policies" that Yates contends underpin her wrongful discharge counterclaim are so vague and non-specific that, if her counterclaim is allowed to proceed, it would undermine the basic presumption of employment at will in the State of West Virginia. At a minimum, permitting such claims to proceed would set a precedent that any former employee that claimed that his or her discharge contravened some general notion of what is "fair" would be permitted to maintain an action for wrongful discharge. Such a precedent is plainly inconsistent with decisions of the Supreme Court of Appeals of West Virginia, which traditionally has refused to recognize additional bases for the public policy exception to the at-will employment presumption in the absence of specificity as to the manner in which the public policy applies.

For example, in Birthisel, *supra*, the plaintiff was a social worker who was terminated after she refused to add treatment information to closed patient charts in preparation for an accreditation visit. Ms. Birthisel relied on regulations of the West Virginia Social Work Board and general policy language contained in the social workers' licensing statute as substantial public policy sources upon which to base her claim of retaliatory discharge. The court determined that these sources did not reflect a substantial public policy of West Virginia, reasoning that:

> Neither of these provisions contain any specific guidance. Their general admonitions as to the requirement of good care for patients by social workers do not constitute the type of substantial and clear public policy on which a retaliatory discharge claim can be based. If such a general standard could constitute a substantial public policy, it would enable a social worker to make a challenge to any type of procedure that the worker felt violated his or her sense of good service.

Id., 424 S.E.2d at 612-13.  The court also commented that:

> Both the statute and the regulations relied upon by the plaintiff are extremely general and do not constitute a specific statement of public policy.  Moreover, when we look to the disciplinary grounds contained in the social workers' licensing statute . . . we do not find any direct prohibition against the conduct requested of the plaintiff in this case.

Id. at 614 (footnote omitted).  The alleged public policies that Yates asserts form the legal basis of her counterclaims are even vaguer than those by the plaintiff in Birthisel and, as noted above, constitute nothing more than general notions of what Yates regards as "fair."  While the plaintiff in Birthisel was at least able to point to regulations that mandated good care for patients by social workers, Yates has pointed to nothing where that legislature or any administrative agency has mandated that: (1) an employee of a health care institution must report criminal behavior occurring on employer's premises with the employer's knowledge; (2) an employee of a health

8

care institution must report his or her employer's failure to conduct itself in its fiduciary capacity; and/or (3) that an employee has a statutorily protected right to testify in a legal action. As to the third claimed basis for Yates' wrongful discharge counterclaim, no legal proceeding has been filed in which Yates claims to have offered testimony. Indeed, the Court can take judicial notice of the state court docket, which reveals that there has been no legal proceeding filed by the elderly female resident. However, even if Yates offered testimony outside the confines of a legal proceeding, she has not pleaded that Weirton Health Partners was aware of such testimony at the time Yates was terminated. As the court in Birthisel noted, if Yates' claim for wrongful discharge is permitted to proceed on these vague and non-specific principles, it would enable an employee to make a challenge to any type of procedure that he or she believed – correctly or incorrectly – constituted criminal conduct, a breach of some alleged fiduciary duty and/or any conduct that the employee believed was unfair.

Consequently, Yates has failed as a matter of law to show that any of her actions were in support of a substantial public policy of the State. Like the regulations of the West Virginia Social Work Board deemed by the Supreme Court in Birthisel as too general to constitute a specific statement of public policy, the principles cited by Yates do not constitute specific guidance or direct prohibition of conduct. Should courts permit public policy claims to proceed, the effect would essentially permit the public policy exception to swallow the broader at-will employment doctrine and would plainly be contrary to the "great caution" taken by West Virginia courts in applying public policy to wrongful discharge actions. Union Carbide Corp., 870 F.2d at 962-63.

It is important to note that when the court chose the phrase "substantial public policy" in Harless, it was articulating the narrow parameters of an exception to the at-will

9

employment doctrine. The substantial public policy exception certainly does not encompass every broad policy pronouncement found in each statute or regulation or, as in this case, uncodified legal precepts such as a breach of an asserted fiduciary duty. <u>Tudor v. Charleston Area Med. Ctr., Inc.</u>, 203 W. Va. 111, 506 S.E.2d 554, 576 (W. Va. 1997) *(*Maynard, Justice, concurring in part, and dissenting in part). For these reasons, Weirton Health Partners has failed to state a claim for wrongful/constructive discharge in violation of public policy as a matter of law.

**B.   YATES' COUNTERCLAIM FOR OUTRAGE IS IMPROPER DUE TO THE OPERATION OF THE IMMUNITY PROVISIONS OF THE WEST VIRGINIA WORKERS' COMPENSATION ACT.**

The West Virginia Workers' Compensation Act provides employers with "sweeping immunity from common-law for liability for negligently inflicted injuries." <u>Bias v. E. Ass'd Coal Corp.</u>, No. 32778, 2006 W. Va. LEXIS 43, *14 (June 8, 2006). This immunity "is not easily forfeited." <u>Id.</u> Indeed, the only ways in which this immunity may be waived is by: (1) defaulting on the payments required by the Act; (2) deliberately intending to cause injury or death to an employee; or (3) where the legislature has by statute expressly provided a remedy outside of the workers' compensation system. <u>Id.</u> Here, Yates' outrage claim should be dismissed for the reason that Yates has failed to plead the requisite elements necessary to establish entitlement to the "deliberate intention" exception to employer immunity under the Act.

Although outrage is considered to be an "intentional tort" under the common law of West Virginia, Yates' counterclaim does not allege the requisite intent on the part of Weirton Health Partners necessary for the "deliberate intention" exception to employer immunity under the Workers' Compensation Act to apply. <u>See</u> W. Va. Code § 23-4-2 (d). Indeed, the express language of the statute confirms that "in enacting the immunity provisions of this chapter, the Legislature intended to create a legislative standard for loss of that immunity of <u>more narrow application</u> and containing <u>more specific mandatory elements</u> than the <u>common law tort system</u>

10

concept and standard of willful, wanton and reckless misconduct." W. Va. Code § 23-4-2(d)(1) (emphasis added).

Thus, Weirton Health Partners' immunity from common law tort actions under the Workers' Compensation Act is not defeated merely by alleging that an act was done willfully, which Yates' counterclaim does not even allege. Instead, the statute provides that the "deliberate intention" exception will only be applicable where there is a specific intent to produce the specific injury claimed and this requirement "may not be satisfied by allegation or proof of: (A) conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct." W. Va. Code § 23-4-2 (d)(2)(i) (emphasis added).

An examination of Yates' counterclaim reveals that she does not properly allege a "deliberate intention" cause of action. To the contrary, Yates merely alleges that "the above-described conduct of [Weirton Health Partners] was extreme and outrageous and constitutes the tort of outrage against [Yates]." (Counterclaim ¶ 13). By the express language of the statute, this type of general allegation is insufficient to invoke the "deliberate intention" exception to employer immunity from tort claims under the Workers' Compensation Act. See W. Va. Code § 23-4-2. As such, Weirton Health Partners is immune from Yates' outrage claim.

**C. YATES' COUNTERCLAIM FOR OUTRAGE SHOULD BE DISMISSED BECAUSE THE COUNTERCLAIM FAILS TO ALLEGE ANY FACTS INDICATING THAT WEIRTON HEALTH PARTNERS' ACTIONS WERE ATROCIOUS, INTOLERABLE, AND SO EXTREME AND OUTRAGEOUS AS TO EXCEED THE BOUNDS OF DECENCY.**

In West Virginia, a plaintiff may prevail on a claim for damages under the tort of intentional infliction of emotional distress, if he provides sufficient evidence of four elements: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer

11

emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. Travis, 504 S.E.2d at 425. The West Virginia Supreme Court of Appeals has held that, in order to meet this standard, the conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Tanner v. Rite Aid of W. Va., Inc., 461 S.E.2d 149, 157 (W. Va. 1995) (quoting RESTATEMENT (SECOND) OF TORTS § 46(1) Comment (d) (1965)).

The first element of the cause of action requires a showing by the plaintiff that the defendant's actions towards the plaintiff were "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." The defendant's conduct "must be more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." Travis, 504 S.E.2d at 425. According to Yates, she was discharged from employment allegedly for registering complaints about an unspecified situation involving two residents. (Complaint at ¶¶ 8, 10, 12, 13, 17-20). Even accepting Yates' allegations as true, these acts are a far cry from the level of being "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." Travis, 504 S.E.2d at 425.

West Virginia courts have been particularly reluctant to allow claims for intentional infliction of emotional distress in the employment context. See, e.g., Johnson v. Hills Dep't Store, 488 S.E.2d 471, 475 (W. Va. 1997) (store's conduct toward mother accused of shoplifting was not sufficiently extreme and outrageous to support claim of intentional infliction of emotional distress brought by her young daughter); Dzinglski v. Weirton Steel Corp., 445 S.E.2d 219, 227 (W. Va. 1994) (employer's investigation of management employee accused of taking kickbacks was appropriate and not outrageous); Hines v. Hills Dep't Stores, Inc., 454 S.E.2d 385, 390 (W. Va. 1994) (employer's conduct in prosecuting cashiers who purchased items at erroneously discounted price instead of merely discharging them was not outrageous); Keyes v. Keyes, 392 S.E.2d 693, 696 (W. Va. 1990) (defendants' attempts to prevent plaintiff from participating in his father's funeral and from sharing in proceeds of father's estate held

insufficiently outrageous to state a claim); Harless, 169 W.Va. at 695-96, 289 S.E.2d at 705 (retaliatory discharge of employee who reported employer's illegal practices did not reach level of outrageous conduct to support a claim for intentional infliction of emotional distress).

Indeed, few courts have found that a plaintiff has met the "extreme and outrageous" standard under West Virginia law. In Miller v. SMS Schloemann-Siemag, Inc., 203 F. Supp. 2d 633 (S.D. W. Va. 2002), the court held that a wife had sufficiently alleged a claim of intentional infliction of emotional distress where the defendant employer's offer to transport her severely injured husband to a medical facility was conditioned on her promise not to treat the transport as an admission of liability for his injuries. Id. at 636, 640. In Bell v. Nat'l Republican Cong. Comm., 187 F. Supp. 2d 605 (S.D. W. Va. 2002), the defendant falsely labeled the plaintiff as a child molester and rapist. Id. at 618. The court found that the defendant's conduct could reasonably be considered outrageous and therefore presented a question for the jury as to whether it was in fact outrageous. Id.

The cases set forth above illustrate the type of conduct that is sufficiently outrageous to permit recovery, and the type of conduct that is not. Here, Weirton Health Partners' alleged conduct is far less egregious than the actions in Miller where the employer allegedly withheld medical care from a severely injured man. Yates' allegations are woefully insufficient to suggest that this a case where the plaintiff suffered emotional distress "so severe that no reasonable [person] could be expected to endure it." Hines, 454 S.E.2d at 392 (quoted authority omitted). Therefore, Yates' counterclaim for outrage should be dismissed.

**D. YATES' COUNTERCLAIM FOR OUTRAGE SHOULD ALSO BE DISMISSED BECAUSE THE COUNTERCLAIM FAILS TO ALLEGE ANY FACTS INDICATING THAT YATES SUSTAINED THE TYPE OF INJURIES REQUIRED TO ASSERT SUCH A CLAIM.**

Even if the counterclaim alleges sufficient facts to meet the first element of a claim of intentional infliction of emotional distress – which it does not – it fails to allege any facts indicating that Yates sustained the type of injuries required to assert such a claim. The fourth element of a claim of outrage requires that "the emotional distress suffered by the plaintiff

was so severe that no reasonable person could be expected to endure it." Travis, 504 S.E.2d at 425. Although Yates states in a conclusory fashion that she suffered emotional distress (Counterclaim at ¶ 11), she asserts no facts describing such distress, any treatment, or the impact such suffering has had on her life. Cf. Courtney v. Courtney, 413 S.E.2d 418 (W. Va. 1991) (finding that complaint stated a cause of action for intentional infliction of emotional distress where plaintiff asserted that his emotional distress was so severe that he has had to seek psychiatric care). Indeed, the counterclaim fails to state "more than labels and conclusions" and, in fact, merely provides "a formulaic recitation of the elements of a cause of action." See Twombly, 127 S. Ct. at 1964-65.

In Lewis v. First Nat'l Bank of Stuart, 1987 WL 37397 *1 (4th Cir. May 8, 1987), the Court of Appeals for the Fourth Circuit found that a district court in Virginia correctly dismissed a plaintiff's claim for intentional infliction of emotional distress on the basis that she had failed to identify evidence showing intentional infliction of emotional distress.[6] The plaintiff, Lewis, sued her lending institution for maliciously initiating criminal proceedings against her and intentionally inflicting emotional distress upon her. Id. at *1. Specifically, the bank had her arrested twice from her place of employment, which resulted in sixteen days of incarceration and the loss of her job. Id. Even though the charges leading to the arrests were later dismissed, the Court of Appeals concluded that such injuries are "merely the unpleasant consequences of being arrested, and that they do not by themselves show that Lewis suffered severe emotional distress." Id. at *3.

In this case, not only has Yates failed to allege any symptoms of emotional distress, she provides no information whatsoever indicating that she has suffered enduring physical, mental or emotional injuries. Given that the plaintiff in Lewis, who was wrongfully arrested twice at her place of business, lost her job, and was incarcerated, did not allege

---

[6] Although Lewis arose in Virginia, that state's law mirrors West Virginia's law with respect to claims for intentional infliction of emotional distress, including the rule that "liability arises only when the distress inflicted is so severe that no reasonable person could be expected to endure it." Russo v. White, 400 S.E.2d 160, 163 (Va. 1991).

14

sufficiently severe injuries to maintain her claim for intentional infliction of emotional distress, Yates, who alleges no emotional or physical injuries, cannot state a claim to relief that is plausible on its face. See Twombly, 127 S. Ct. at 1974. Accordingly, Yates' claim for outrage should be dismissed in its entirety and with prejudice.

> E. **YATES' COUNTERCLAIM FOR ATTORNEY FEES SHOULD BE STRICKEN.**

In her counterclaim, Yates requests attorney fees. West Virginia has adopted the American rule, which provides that "each litigant bears his or her own attorney fees absent express statutory, regulatory, or contractual authority for reimbursement." Daily Gazette Co. v. Canady, 175 W.Va. 249, 332 S.E.2d 262, 263 (1985). In her counterclaim, Yates has not pleaded any contractual authority for reimbursement of attorney's fees. Therefore, Yates is not entitled to attorney's fees unless expressly provided for by statute or regulation. The law is clear that attorney's fees are not available for a common law claim for wrongful discharge. In Kalany v. Campbell, 220 W. Va. 50, 640 S.E.2d 113 (2006), the Supreme Court of Appeals expressly rejected the argument that a plaintiff was entitled to an award of attorney's fees on a common law claim for wrongful discharge predicated on conduct prohibited by the WVHRA. Specifically, the Court stated:

> While we appreciate Appellees' attempt to extend the statutory award of fees and costs to common law actions based on the theory that the same underlying public policy rationale that seeks to encourage the prosecution of actions instituted under the Act should also apply to actions brought outside of the Act, the law does not permit us to make such an extension.
>
> ***
>
> The trial court was acting outside of the statutory authority extended by the Legislature in making an award of attorney's fees and costs under the Act in connection with a common law claim of retaliatory discharge.

Kalany, 220 W.Va at 57-58, 640 S.E.2d at 120-21. Collins v. Elkay Mining Co., 179 W. Va.

549, 553, 371 S.E.2d 46, 50 (1988) ("[o]rdinarily, in a Harless-type retaliatory discharge action, the plaintiff is not entitled to recover his attorney's fees."). Therefore, Yates' claim for attorney's fees under her common law claims for wrongful discharge and outrage/intentional infliction of emotional distress should be stricken as a matter of law.

## IV. CONCLUSION

For the reasons stated above, Yates has failed to state viable common law claims for wrongful discharge and outrage/intentional infliction of emotional distress in her counterclaim. Yates has failed to identify a substantial public policy upon which her wrongful discharge counterclaim is predicated. Further, Yates' common law claim for outrage/intentional infliction of emotional distress is improper in light of the immunity from common law tort actions granted to a qualified employer under the Workers' Compensation Act, as well as the fact that Yates failed to plead sufficient facts necessary to state a claim for outrage/intentional infliction of emotional distress. Yates has failed to state a sufficient claim for outrage/intentional infliction of emotional distress. Finally, Yates' claim for attorney's fees, insofar as it relates to Yates' common law claims for wrongful discharge, should be stricken. Therefore, Weirton Health Partners requests that the counterclaims be dismissed in its entirety and with prejudice.

Dated: <u>July 30, 2009</u>    Respectfully submitted,

JACKSON LEWIS LLP


*/s Craig W. Snethen*
Martin J. Saunders
W.Va. I.D. No. 9236
saunderm@jacksonlewis.com
Craig W. Snethen
W.Va. I.D. No. 10429
snethenc@jacksonlewis.com
1225 Market Street
Wheeling, WV 26003

(304) 230-6600
(304) 230-1462 *facsimile*

Counsel for Weirton Health Partners, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the BRIEF IN SUPPORT OF WEIRTON HEALTH PARTNERS' MOTION TO DISMISS COUNTERCLAIM AND MOTION TO STRIKE was served upon the following parties this 30th day of July, 2009:

Steven M. Recht, Esq.
RECHT LAW OFFICE
P.O. Box 841
Weirton, WV 26062

Michael G. Simon, Esq.
FRANKOVICK, ANETAKIS, COLANTONIO & SIMON
337 Penco Road
Weirton, WV  26062

*s/ Craig W. Snethen*
Craig W. Snethen