IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


WEIRTON HEALTH PARTNERS, LLC,

        Plaintiff,

v.                                    Civil Action No. 5:09CV40
                                                         (STAMP)
GABRIELLE YATES,

        Defendant.


                  **MEMORANDUM OPINION AND ORDER**
      **GRANTING WITH LEAVE TO AMEND IN PART AND DENYING IN PART**
   **WEIRTON HEALTH PARTNERS, LLC'S MOTION TO DISMISS COUNTERCLAIM,**
         **GRANTING WEIRTON HEALTH PARTNERS, LLC'S MOTION TO STRIKE,**
                 **GRANTING DEFENDANT GABRIELLE YATES'**
                    **REQUEST TO AMEND COUNTERCLAIM AND**
              **GRANTING DEFENDANT GABRIELLE YATES' MOTION**
                 **FOR LEAVE TO FILE AMENDED COUNTERCLAIM**

                       I.  Procedural History

     The plaintiff, Weirton Health Partners, LLC ("Weirton Health"), commenced this civil action asserting claims for defamation, tortious interference with contractual relationship, false light, intentional interference with prospective business relationships, and breach of contract against the defendant, a former employee.  The defendant, Gabrielle Yates, filed both an answer and counterclaims for wrongful discharge in violation of an alleged public policy and tort of outrage/intentional infliction of emotional distress.

     Weirton Health filed a motion to dismiss the two counterclaims and a motion to strike Yates' request for attorneys' fees.[1]  Yates filed a response in opposition to Weirton Health's motion to

---

     [1]These two motions were filed as a joint motion, Docket No. 9.

dismiss the counterclaims, and requested that at the least, she be allowed to amend her counterclaims to cure any pleading deficiencies. Weirton Health did not file a reply.

Thereafter, Yates filed a motion for leave to file an amended counterclaim to include causes of action against Weirton Health for abuse of process and violation of the West Virginia Human Rights Act. Weirton Health filed a response in opposition, to which Yates replied.

For the reasons set forth below, this Court grants with leave to amend in part and denies in part Weirton Health's motion to dismiss counterclaim, grants Weirton Health's motion to strike, grants Yates' request to amend counterclaim, and grants Yates' motion for leave to file amended counterclaim.

## II. Facts[2]

Yates was hired as a resident assistant at the Wyngate Senior Living Community ("Wyngate"), operated by Weirton Health, and located in Weirton, West Virginia. In or around June of 2008, several staff members at Wyngate discovered a relationship between two of the residents. Wyngate eventually contacted the West Virginia Office of Health Facility Licensure & Certification ("OHFLAC") to report the conduct of the two residents. A manager at Wyngate thereafter contacted the daughter of the elderly female resident and informed her of the relationship. At that time, the

---

[2]In accordance with the applicable standard of review, stated below, this Court will accept, for the purposes of deciding this motion, the factual allegations contained in the complaint as true.

daughter allegedly consented to permit the relationship to continue.

Nevertheless, Weirton Health alleges that Yates contacted the daughter and told her that her mother was being repeatedly raped by the male resident. Weirton further alleges that Yates reported to the daughter, families of other residents at Wyngate, and several members of the community that despite knowing that the elderly female resident was being raped, the administration refused to take any action. Eventually, officers from the local police department conducted an investigation into the matter, but they did not file any charges. OHFLAC also conducted an investigation but found insufficient evidence to identify sexual abuse or that Wyngate acted inappropriately. The elderly female resident was thereafter removed from Wyngate by her daughter.

Following these events, Weirton Health filed the above-styled civil action against Yates. Weirton Health argues that Yates' statements were defamatory, caused the elderly female resident to be removed from Wyngate, were made with the intent to injure ongoing professional relationships, and injured Weirton Health's good reputation.

In her counterclaims, Yates claims that she was wrongfully discharged in violation of substantial public policy. Specifically, Yates argues that she was terminated because she discovered and reported potentially criminal behavior, reported her employer's failure to properly conduct itself in a fiduciary

capacity, and gave testimony in the legal action. Yates also claims that the conduct of Weirton Health constituted extreme and outrageous conduct. As part of her damages, Yates requests attorneys' fees and costs.

III. Applicable Law

A. Motion to Dismiss

In assessing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept the factual allegations contained in the complaint as true. Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Dismissal is appropriate pursuant to Rule 12(b)(6) only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'" Id. at 143-44 (quoting Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)); see also Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).

Stated another way, it has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the

claim and is designed to test whether there is a genuine issue of material fact. Id. § 1356, at 298. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). Id. § 1357, at 304, 310.

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in very limited circumstances. Rogers, 883 F.2d at 325. A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on is face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The facts alleged must be sufficient "to raise a right to relief about the speculative level." Twombly, 550 U.S. at 555.

B. <u>Motion for Leave to File Amended Counterclaim</u>

Federal Rule of Civil Procedure 15(a)(1)(A) states, in pertinent part, that "[a] party may amend its pleading once as a matter of course . . . before being served with a responsive pleading." If a party seeks to amend its pleadings in all other cases, it may only do so "with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

5

Rule 15(a) grants the district court broad discretion concerning motions to amend pleadings, and leave should be granted absent some reason "such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Ward Elec. Serv. v. First Commercial Bank, 819 F.2d 496, 497 (4th Cir. 1987); Gladhill v. Gen. Motors Corp., 743 F.2d 1049, 1052 (4th Cir. 1984).

## IV. Discussion

### A. Motion to Dismiss

#### 1. Wrongful Discharge

Weirton Health argues that Yates' wrongful discharge claim must be dismissed because it fails to establish that Weirton Health's conduct contravened any substantial public policy of the state of West Virginia.

The West Virginia legislature has authorized the Secretary of the State Department of Health and Human Resources to promulgate legislative rules "establishing minimum standards of operation of assisted living residences" in the state of West Virginia. W. Va. Code § 16-5D-5(b). In West Virginia, such legislative rules have "'the force of law.'" Appalachian Power Co. v. State Tax Dep't of West Virginia, 466 S.E.2d 424 (W. Va. 1995) (quoting W. Va. Code § 29A-1-2(d)).

The legislative rules establishing the public policy Weirton Health is alleged to have contravened provide:

**W. Va. Code § 16-5D-1(a), (b)**

It is the policy of this state to encourage and promote the development and utilization of resources to ensure the effective care and treatment of persons who are dependent upon the services of others by reason of physical or mental impairment . . .

. . . [I]t is the policy of this state to encourage, promote and require the maintenance of assisted living residences so as to ensure protection of the rights and dignity of those using the services of assisted living residences.

**W. Va. Code § 61-8B-4**

(a) A person is guilty of sexual assault in the second degree when:

(1) Such person engaged in sexual intercourse or sexual intrusion with another person without the person's consent . . .

**W. Va. Code § 61-8B-8(a)**

A person is guilty of sexual abuse in the second degree when such person subjects another person to sexual contact who is mentally defective or mentally incapacitated.

**W. Va. Code § 16-5D-8(c)**

No assisted living residence may discharge or in any manner discriminate against any resident or employee for the reason that the resident or employee has filed a complaint or participated in any proceeding specified in this article.

According to Weirton Health, these legislative rules do not constitute a specific statement of public policy because they are too general. In support of this position, Weirton Health relies upon the West Virginia Supreme Court decision in Birthisel v. Tri-

Cities Health Servs. Corp., 424 S.E.2d 606 (W. Va. 1992). There, the West Virginia Supreme Court stated that "[a]n employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations." Birthisel, 424 S.E.2d at 612. "Inherent in the term 'substantial public policy' is the concept that the policy will provide specific guidance to a reasonable person." Id.

With these principles in mind, the Birthisel court considered the retaliatory discharge claims of a social worker who was discharged after she refused to comply with her supervisor's directive to add information to closed patient charts in preparation for an accreditation visit. Id. at 609. The social worker invoked certain provisions of the West Virginia Code of Ethics to establish a substantial public policy. Those provisions state:

> THE SOCIAL WORKER'S CONDUCT AND COMPORTMENT AS A SOCIAL WORKER:
>
> PROPRIETY-The social worker should maintain high standards of personal conduct in the capacity or identity as social worker.
>
> COMPETENCE AND PROFESSIONAL DEVELOPMENT-The social worker should strive to become and remain proficient in professional practice and the performance of professional functions.
>
> INTEGRITY-The social worker should act in accordance with the highest standards of professional integrity.

8

> THE SOCIAL WORKER'S ETHICAL RESPONSIBILITY TO CLIENTS:
>
> PRIMACY OF CLIENTS' INTERESTS-The social worker's primary responsibility is to the clients.

Id. at 610 n.4 (quoting the West Virginia Social Work Code of Ethics, 25 W. Va. Code R. App. A). The social worker also relied upon the following policy language set forth in the social workers' licensing statute:

> "The Legislature finds that the profession of social work profoundly affects the lives of the people of this state.
>
> "The profession of social work exists to provide humane and effective social services to individuals, families, groups, communities and society in order that social functioning may be enhanced and the quality of life improved.
>
> "Social workers are involved with individuals who are hurt, vulnerable and having difficulty in areas of their lives which are extremely sensitive. Failure to help these individuals, whether through incompetence or irresponsibility, is a serious matter. These individual citizens have the potential to be greatly harmed by the services of ill-prepared and incapable persons acting as social workers. The economic burden of social services which do not give effective aid is a serious social problem.
>
> "It is the purpose of this article to protect the public by setting standards of qualification, education, training and experience for those who seek to engage in the practice of social work and to promote high standards of professional performance for those engaged in the profession of social work."

Id. at 613 n.11 (quoting W. Va. Code § 30-30-1). The Birthisel court concluded that these provisions are general admonitions which are aspirational in nature and that, consequently, these rules do not provide specific guidance to a reasonable person and are subject to interpretation.

This Court agrees with Yates, however, that <u>Tudor v. Charleston Area Med. Ctr.</u>, 506 S.E.2d 554 (W. Va. 1997), provides more persuasive legal authority in relation to this action. There, the West Virginia Supreme Court held that rules similar to those at issue in this action stated a substantial public policy warranting a claim for constructive retaliatory discharge where the plaintiff, a registered nurse at a hospital, resigned after multiple failed attempts to persuade the hospital to comply with the staffing mandate provided by West Virginia Code of States Rules § 64-12-14.2.4. Syllabus Point 5 of that decision held:

> West Virginia Code of State Regulations § 64-12-14.2.4 (1987) sets forth a specific statement of a substantial public policy which contemplates that a hospital unit will be properly staffed to accommodate the regulation's directive; to ensure that patients are protected from inadequate staffing practices; and to assure that medical care is provided to hospital patients, especially children and young adolescents, who must depend upon others to protect their medical interests and needs.

Syl. Pt. 5, <u>Tudor</u>, 506 S.E.2d at 558.

As in <u>Tudor</u>, the legislative rules invoked in this action mandate certain conduct, including reporting practices, and they implicate medical welfare concerns for a vulnerable population.[3] Given the similarities between this case and <u>Tudor</u>, this Court rejects Weirton Health's argument that Yates' wrongful discharge allegations fail to state a claim upon which relief can be granted.

---

[3]In <u>Tudor</u>, the vulnerable population was identified as children and young adolescents. Here, it is the elderly.

2. Tort of Outrage

Weirton Health contends that Yates' counterclaim for tort of outrage/intentional infliction of emotional distress must be dismissed for failure to state a claim upon which relief can be granted because the West Virginia Workers' Compensation Act confers employer immunity for such claims, and Yates has not sufficiently pleaded the requisite intent necessary for the "deliberate intention" exception to apply. Weirton Health also argues that Yates has failed to allege any facts indicating that Weirton Health's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency, or that Yates sustained the type of injury required to assert such a claim.

This Court holds that because Yates fails to plead sufficient facts under Rule 8 of the Federal Rules of Civil Procedure, her counterclaim for tort of outrage/intentional infliction of emotional distress must be dismissed at this time, with leave for Yates to amend if she can appropriately do so. In <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007), the United States Supreme Court addressed the sufficiency of an antitrust complaint pursuant to Federal Rule of Civil Procedure 8(a)(2). The class of plaintiffs in <u>Twombly</u> alleged that major telecommunications providers engaged in parallel conduct indicative of a conspiracy to restrain trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. In reviewing the plaintiffs' complaint, the Court utilized a "plausibility standard," <u>id.</u> at 1698, under which a complaint must

contain "enough facts to state a claim to relief that is plausible on its face," id. at 1974. The Court rejected the oft-quoted language from its decision in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that dismissal under Rule 12(b)(6) is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Court stated that Conley's "no set of facts" language "earned its retirement" because it had spawned among courts the unintended literal reading that "any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings." Twombly, 127 S. Ct. at 1968. A dismissal must be ordered if the legal theories or factual allegations pleaded are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992).

To prevail on a claim for tort of outrage/intentional infliction of emotional distress, a plaintiff must show the following four elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Travis v. Alcon Laboratories, Inc., 504 S.E.2d 419, 425 (W. Va. 1998).

A review of the complaint reveals that Yates has not met her obligation to provide the grounds for relief. The first prong requires that Yates show atrocious conduct; it must be more than unkind or unfair. Id. Here, Yates has shown no evidence of conduct that an average member of the community would find outrageous. Id. at 428. Rather, Yates merely contends that she was discharged from employment for reporting criminal behavior, reporting her employer's failure to properly conduct itself in a fiduciary capacity, and giving testimony in the legal action. Thus, Yates has failed to sufficiently allege any conduct by Weirton Health that rises to the level of intolerable or atrocious.

Furthermore, this Court agrees with Weirton Health that Yates' has not sufficiently alleged that her tort of outrage/intentional infliction of emotional distress claim falls outside the immunity provisions of the West Virginia Workers' Compensation Act. Under this Act, employers are granted "sweeping immunity from common-law for liability for negligently inflicted injuries." Bias v. E. Ass'd. Coal Corp., 640 S.E.2d 540, 544 (W. Va. 2006). Immunity can be forfeited, however, when the employer has deliberately intended to cause injury or death to an employee. Id. Sufficiently pleading the "deliberate intention" exception requires, in part,

> a showing of an actual, specific intent and may not be satisfied by allegation or proof of: (A) Conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct.

W. Va. Code § 23-4-2(d)(2)(I).

13

Here, Yates claims only that Weirton Health's conduct was extreme and outrageous and constitutes the tort of outrage/intentional infliction of emotional distress. Such a general allegation does not invoke the "deliberate intention" exception to employer immunity under the West Virginia Workers' Compensation Act to apply.

In her response to Weirton Health's motion to dismiss, however, Yates requests that she be allowed to amend her counterclaim to cure any pleading deficiencies. This Court construes such request as a motion to amend.

Rule 15(a) grants the court broad discretion, and a court should grant leave to amend absent an improper motive such as undue delay, bad faith, or successive motions to amend that do not cure the alleged deficiency. See Ward Elec. Serv., 819 F.2d at 497. In Foman v. Davis, 371 U.S. at 182, the Supreme Court stated,

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of all allowance of the amendment, futility of the amendment, etc. -- the leave should, as the rule requires, be "freely given."

This Court holds that Yates has not displayed undue delay, bad faith, or dilatory motive in this request. Neither is the prejudice to Weirton Health significant enough nor futile so as to disallow an amendment. Thus, this Court grants Yates' request to amend her pleading to cure the deficiencies regarding her counterclaim for tort of outrage/intentional infliction of

14

emotional distress. Weirton Health's motion to dismiss this issue, therefore, is granted with leave for Yates' to amend her claim.

B. Motion to Strike

Weirton Health asserts that Yates' request for attorneys' fees be stricken pursuant to the long-standing rule that litigants normally bear their own costs. This Court agrees.

"As a general rule, each litigant bears his or her attorney fees absent express statutory, regulatory, or contractual authority for reimbursement." Daily Gazette Co., Inc. v. Canady, 332 S.E.2d 262, 263 (W. Va. 1985). Nothing in Yates' pleading infers that she is seeking these fees under any contractual authority. Furthermore, West Virginia law holds that attorneys' fees and costs are generally not available for a common law claim for wrongful discharge. See Kalany v. Campbell, 640 S.E.2d 113, 121 (W. Va. 2006) ("The trial court was acting outside of the statutory authority extended by the Legislature in making an award of attorney's fees and costs under the [West Virginia Human Rights] Act in connection with a common law claim of retaliatory discharge."). Thus, Weirton Health's motion to strike Yates' counterclaim for attorneys' fees is granted as to her common law claim for wrongful discharge.

C. Motion for Leave to File Amended Counterclaim

Yates seeks to amend her counterclaims to include claims against Weirton Health for abuse of process and violation of the West Virginia Human Rights Act. Weirton Health argues that the

proposed amended complaint is both untimely and futile. This Court disagrees.

Yates' motion to file amended counterclaims is not untimely. As stated above, Rule 15(a) grants the court broad discretion, and a court should grant leave to amend absent an improper motive such as undue delay, bad faith, or successive motions to amend that do not cure the alleged deficiency. See Ward Elec. Serv., Inc., 819 F.2d at 497. Where counsel for a party has been aware of a possible claim for a long period of time, but nevertheless refrains from moving to amend until the "last minute," a district court does not abuse its discretion by denying that party's motion to amend. Woodson v. Fulton, 614 F.2d 940, 943 (4th Cir. 1980).

Here, however, Yates contends that these causes of action only became evident after Weirton Health filed its answer, and Yates performed discovery on the issues. Furthermore, this Court's scheduling order at the time ordered that "[m]otions to join additional parties, motions to amend pleadings, and any crossclaim or counterclaim, as well as any similar motions, shall be filed on or before **December 28, 2009**." (emphasis included). Yates filed her motion for leave to file an amended counterclaim on December 28, 2009, and while this fact is not dispositive, it certainly bolsters this Court's belief that the motion was timely filed.

Furthermore, after a review of the record, this Court concludes that Yates has not exhibited any bad faith or dilatory motive. Moreover, any prejudice to Weirton Health is not

16

significant enough as to prevent this Court from allowing the amendment, and this Court cannot conclude that Yates' amendment would be futile, as it raises substantive issues that this Court cannot dismiss upon cursory review. Accordingly, Yates' motion for leave to file amended counterclaim is granted.

V. Conclusion

For the reasons set forth above, Weirton Health's motion to dismiss is GRANTED WITH LEAVE TO AMEND IN PART and DENIED IN PART. To the extent that Weirton Health's motion seeks dismissal of Yates' wrongful discharge counterclaim, its motion to dismiss is DENIED. To the extent that it requests dismissal of Yates' tort of outrage/ intentional infliction of emotional distress, the motion to dismiss is GRANTED WITH LEAVE TO AMEND. Furthermore, Weirton Health's motion to strike is GRANTED; Yates' request to amend her original counterclaim to cure any pleading deficiencies is GRANTED; and Yates' motion for leave to file an amended counterclaim is GRANTED.

This Court recognizes that Yates' amended counterclaim which was attached as "Exhibit 1" to her motion for leave to file amended counterclaim, Docket No. 16, does not include any amendments that she would like to make concerning the tort of outrage/intentional infliction of emotional distress counterclaim. Therefore, Yates is DIRECTED to file and serve her amended counterclaim, which includes any amendment she desires to make on her tort of outrage/intentional infliction of emotional distress claim, as well

17

as claims for abuse of process and violation of the West Virginia Human Rights Act, on Weirton Health in accordance with Federal Rule of Civil Procedure 4 on or before **March 19, 2010**. Weirton Health shall make any defenses pursuant to Federal Rule of Civil Procedure 12.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED: March 4, 2010

<pre>                                /s/ Frederick P. Stamp, Jr.
                                FREDERICK P. STAMP, JR.
                                UNITED STATES DISTRICT JUDGE</pre>